IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MARCUS GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 09-4172-CV-C-SOW |
| | ) | |
| COLUMBIA POLICE DEPARTMENT, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court is defendants' Second Motion for Summary Judgment (Doc. #76). For the following reasons, it is hereby granted in part and denied in part.

I. Background

In this civil rights action, plaintiff Marcus Gibson alleges that defendants Bruce Houston, Jeff Rukstad, and Don Weaver (collectively referred to as "officers") used excessive force when conducting his arrest, that he was searched without probable cause, and that the officers subjected him to a strip and body cavity search in violation of his constitutional and civil rights. Plaintiff asserts claims under 42 U.S.C. §1983 and directly under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

On the evening of June 11, 2005, Officer Rukstad was informed during a shift meeting that plaintiff was the subject of an active "stop and hold"[1] due to a report that he had brandished a gun during an alleged assault. Plaintiff disputes the validity and existence of the "stop and hold" because

---

[1] A stop and hold means that there is probable cause to arrest a suspect if and when that individual is located by the police.

the it expired on May 23, 2005, and the warrant for his arrest was denied. Nonetheless, during Officer Rukstad's shift, he observed a vehicle that matched the description of the vehicle police believed plaintiff was operating. At that time, and while following plaintiff's vehicle, Officer Rukstad was able to determine that the vehicle was registered to plaintiff, and further, that plaintiff's driving privileges had been revoked.

Officer Rukstad, joined by Officer Weaver, stopped plaintiff's vehicle. Officer Rukstad informed plaintiff that he had been stopped because he was driving while his license was revoked – which plaintiff freely admitted. Officer Rukstad then advised plaintiff that he was going to be arrested and asked him to exit his vehicle. Officer Rukstad then placed plaintiff in handcuffs and initiated a search of plaintiff's body incident to the arrest. The next series of events are largely in dispute between the parties; Officer Rukstad claims that, while patting down plaintiff, he found what appeared to be a knotted bag in between plaintiff's buttocks. Plaintiff argues that the knotted bag was inside his rectal cavity, thus the search went "far beyond a patdown."

According to Officer Rukstad, he believed plaintiff was concealing narcotics in his buttocks, and he informed plaintiff that he was going to remove the drugs. At this point, plaintiff became unruly and can be seen on the dashboard camera video ("video") shouting at the officers while also attempting to escape the officers' search. Plaintiff says that he was shouting and trying to turn his back in an effort to escape the illegal search and sexual assault. The two officers, Rukstad and Weaver, were able to walk plaintiff back to the police car. Plaintiff continued to struggle and Officer Rukstad sprayed a burst of mace into plaintiff's face. Plaintiff, although handcuffed, was

-2-

Case 2:09-cv-04172-NKL   Document 89   Filed 04/04/12   Page 2 of 16

able to bring his hands over his head to the front of his body.² The officers eventually took plaintiff to the ground in order to subdue him, claiming that he presented a danger to their safety because of his ability to use his hands and arms. Plaintiff denies that he presented any physical threat to the officers, but was merely trying to escape the illegal search. It is unclear from the video whether anyone could view plaintiff while he was on the ground, but the video clearly depicts numerous individuals walking by the scene and their view of the occurrence does not appear to be completely obstructed by the parked police cars.

While on the ground plaintiff continued to struggle, despite the fact that numerous officers were trying to subdue him. Throughout the struggle the officers used various techniques while trying to bring plaintiff under control. Some of these efforts included spraying mace in plaintiff's face, hitting him with a baton, punching him, and kneeing him.

After minutes of struggling, the officers were in enough control of plaintiff to remove the drugs from his person, though this effort can not be seen on the video. Defendants claim that Officer Weaver pulled plaintiff's pants away and that Officer Rukstad reached into plaintiff's shorts and removed a plastic baggie from between his buttocks. Plaintiff, on the other hand, claims that the officers pulled down his pants and underwear and penetrated his rectum to remove the drugs. It is undisputed that Officer Rukstad had a latex glove on his hand at the time the drugs were removed. After nearly eight and a half minutes of struggling, the officers were able to "hog-tie" plaintiff and place him in the back of the squad car. Subsequent testing revealed that the baggie found on plaintiff contained cocaine and ecstasy.

---

² Plaintiff states that he is unusually flexible and has the ability to "safely" dislocate his shoulders. This explains how plaintiff was able to get his hands from behind his body to the front.

-3-

Case 2:09-cv-04172-NKL   Document 89   Filed 04/04/12   Page 3 of 16

II.  Standard

A motion for summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  The moving party bears the burden of presenting sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex, 477 U.S. at 323.  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).  In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004) (citation and internal

-4-

quotations omitted).

### III. Discussion

Initially, the Court notes that plaintiff has withdrawn his claim for invasion of privacy in Count II and his equal protection claim in Count IV. Thus, the Court will grant summary judgment to defendants on Counts II and IV.

**A. Excessive Force**

Defendants contend that they are entitled to qualified immunity on plaintiff's excessive force claims. Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Consequently, courts should "resolv[e] immunity questions at the earliest possible stage in the litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity [acts to balance] two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (2009). This protection is afforded to government officials whether their "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (citations and internal quotation marks omitted).

When evaluating a defense of qualified immunity, the Court must analyze the case under the

-5-

Supreme Court case of Saucier v. Katz, 533 U.S. 194 (2001). In Saucier, the Supreme Court set forth a two-step analysis for determining whether a government official is entitled to qualified immunity. First, the Court must decide "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Id. at 201. If the plaintiff succeeds in this showing, the Court must then decide whether the right at issue was clearly established at the time of the defendant's purported misconduct. Id. This sequence is not mandatory, and district courts may exercise their "sound discretion" in deciding where to start in this analysis. Pearson, 555 U.S. at 818. To summarize, "to withstand a motion for summary judgment on qualified-immunity grounds, a plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the government official knew or should have known that his alleged conduct violated this clearly established right." Radloff v. City of Oelwein, 380 F.3d 344, 347 (8th Cir. 2004) (citation omitted).

With respect to the second step in the analysis, defendants do not deny that it was well-established at the time of this incident that an arrestee had the right to be free from the use of excessive force. See Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2001). Therefore the Court will focus its attention on whether plaintiff has shown a violation of a constitutional right.

Defendants contend that qualified immunity is appropriate on plaintiff's excessive force claims because, even after construing plaintiff's Complaint liberally, defendants' conduct was objectively reasonable. Plaintiff counters that the "stop and hold" on him was outdated on the date of his arrest, and further, that the warrant for his arrest had been denied. Thus, plaintiff says, there

-6-

was no probable cause for stopping him.[3]

Defendants argue that plaintiff's probable cause argument must fail because of the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that if a judgment in favor of a prisoner in a Section 1983 action would necessarily imply the invalidity of the conviction, continued imprisonment, or sentence, then no claim for damages lies unless the conviction or sentence is reversed, expunged, or called into question by issuance of a federal writ of habeas corpus. Id. at 486-87. Heck, in other terms, establishes that if "a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam).

A claim for damages in connection with a conviction that has not been invalidated is not cognizable under Section 1983. Id. at 487. Plaintiff cannot question the probable cause for his arrest here because a finding that there was no probable cause for his arrest would necessarily imply the invalidity of his state court guilty plea to trafficking in drugs in the second degree in violation of Mo. Rev. Stat. § 195.223 and resisting arrest under Mo. Rev. Stat. § 575.150. See, e.g., Id.; Gautreaux v. Sheriff Larry Sanders, 395 Fed. App'x 312 (8th Cir. 2010); Sanders v. Fayetteville Police Depart., 160 Fed. App'x 542 (8th Cir. 2005) (per curiam) (citing Smithart, 79 F.3d at 952) (allegations that defendants lacked probable cause to arrest him and brought unfounded criminal charges challenging validity of conviction are Heck-barred). In his Amended Complaint, plaintiff

---

[3] Defendants' Reply papers argue that plaintiff first raised the lack of probable cause in his suggestions in opposition. However, plaintiff's Amended Complaint clearly articulates that he did not believe Officer Rukstad had probable cause for making the traffic stop.

-7-

specifically claims that "[h]e was pulled over . . . without probable cause for making such a stop." Thus, plaintiff's claim that defendants lacked probable cause is barred by Heck.

Next, the Court addresses whether the officers' actions were objectively reasonable – step one of the qualified immunity inquiry. When evaluating an officer's use of force, the Court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

On July 1, 2010, the Court denied defendants' motion for summary judgment on this ground because there was a conspicuous nine second gap in the dashboard video. The Court noted, however, that "all of the officers' actions contained in the video appear to be reasonable given plaintiff's actions." The Court remains convinced that the officers' actions were objectively reasonable and did not violate plaintiff's constitutional rights in this case. This is true here because at the time of this incident Officer Rukstad was aware that plaintiff, at one point in time, was the subject of a "stop and hold" for a reported incident involving a handgun. Moreover, at the time of the incident plaintiff fought with numerous officers intensely for close to eight minutes, refused to obey the numerous verbal commands to cease resisting, and he and pulled his hands over his head while handcuffed thus putting the officers in a tense situation. Cf. Montoya v. City of Flandreau, 669 F.3d 867 (8th Cir. 2012) (finding genuine issue of fact where officer performed leg sweep and threw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone or actively resisting arrest.); Johnson v. Carroll, 658 F.3d 819, 826-27 (8th Cir. 2001) (genuine issue of fact whether officers used excessive force when they grabbed plaintiff, threw her to the ground,

-8-

and sprayed her with mace despite the fact that she interfered with officers arrest of her nephew, because she did not engage in "severe or violent offense" and "posed at most minimal safety threat to the officers and was not actively resisting arrest."). While plaintiff claims that once he got his hands in front of him he did not try and hit the officers or run away, it was not objectively unreasonable for the officers to conclude that plaintiff was actively resisting arrest and that their safety was in jeopardy once plaintiff's hands were in front of his body as opposed to behind his body as they once were.

The Court also specifically rejects plaintiff's arguments that he was reacting to what he perceived as an illegal search or sexual assault. Plaintiff's subjective motivations for resisting arrest are immaterial. What matters is whether the officers' use of force was "objectively reasonable under the particular circumstances." Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010). Here, plaintiff freely admits that he was resisting arrest. Moreover, the severity of the injuries – or lack thereof – is relevant in determining the use of force used, see Montoya, 669 F.3d at 867, and plaintiff has not highlighted or provided evidence of *any* injury he sustained as a result of alleged excessive force. Lastly, when the officers informed plaintiff that they felt something on him and needed to retrieve it, plaintiff became non-compliant and the events became, "tense, uncertain, and rapidly evolving." Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir. 2008) (citation omitted). Based upon the undisputed facts and granting plaintiff all reasonable inferences, the Court concludes that it was objectively reasonable for the officers to believe that plaintiff was resisting arrest and that he posed an immediate threat of harm to the officers, thus requiring the use of force. Therefore, the Court finds that the officers are entitled to qualified immunity on plaintiff's excessive force claims.

**B. Body Cavity/Strip Search Claims**

Defendants next move for summary judgment on plaintiff's body cavity/strip search claims, contending that the search involved a reach-in search and not a body cavity or strip search. In the Court's Order on July 1, 2010, the Court concluded that "the justification for the search and place of the search are firmly established." Thus, the remaining issues to be resolved are the scope of the intrusion and the manner in which the search was conducted.

The Fourth Amendment prohibits unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979). Body cavity and strip searches are governed by the Fourth Amendment and are actionable under Section 1983. See Schmidt v. City of Bella Villa, 557 F.3d 564, 572 (8th Cir. 2009); Richmond v. City of Brooklyn, 490 F.3d 1002 (8th Cir. 2007); Pace v. City of Des Moines, 201 F.3d 1050 (8th Cir. 2000). Pursuant to Bell v. Wolfish, the Court must consider, "(1) the justification for initiating the search, (2) the scope of the particular intrusion, (3) the place in which the search is conducted, and (4) the manner in which it is conducted." Schmidt, 557 F.3d at 572 (citing Bell, 441 U.S. at 559). Contrarily, the Eighth Circuit has held that "a reach-in search of a clothed suspect [that] does not display a suspect's genitals to onlookers . . . may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy." United States v. Williams, 477 F.3d 974, 977 (8th Cir. 2007).

Plaintiff maintains that the officers pulled down his shorts, spread his legs apart, and removed the baggie containing drugs from his rectum. Defendants maintain that they retrieved the drugs by performing a reach-in search. Defendants maintain that the video clearly depicts the lack of genuine issues of fact regarding plaintiff's claim that the search was a body cavity/strip search, and further, exigent circumstances were present to justify the search despite the fact that the search occurred on the street. The Court disagrees. The video is inconclusive as to what methods the

-10-

defendants used to obtain the drugs from plaintiff. There are numerous officers surrounding the plaintiff and the video is of poor quality. The Court notes also that defendants did not appear to do anything to protect the plaintiff's privacy. Defendants claim they were obstructing any view of the plaintiff while he was on the ground, but the video clearly shows pedestrians walking past the scene, as well as vehicles traveling towards the plaintiff, and it does not appear that the officers standing around the plaintiff was done as a means of protecting his privacy. Moreover, at least one individual – Travis Dennis – was able to see the plaintiff while he was on the ground, although he admitted that he was unable to view the drugs being removed from plaintiff and that he did not see the plaintiff's "buttocks cheeks spread apart." It is also apparent that the police cars did not provide as much obstruction as defendants would have this Court believe. Indeed, numerous bystanders appeared to have witnessed some part of this occurrence as can be seen in the video. Thus, the Court finds there is a genuine issue of fact as to whether defendants performed the more intrusive strip/cavity search or the less intrusive reach-in search. A jury will have to decide which type of search occurred.[4]

Alternatively, defendants contend they are entitled to qualified immunity on plaintiff's claims relating to the strip/body cavity search. For the reasons just stated, the Court finds there is a genuine issue of fact as to whether defendants performed the more intrusive strip/cavity search or

---

[4] The Court also notes that the Supreme Court's recent decision in Florence v. Board of Chosen Freeholders of County of Burlington, No. 10-945, 2012 WL 1069092 (2012), does not apply in this case. In Florence, the Supreme Court held that jail administrators may require all arrestees who are *committed to the general population of a jail* to undergo a visual strip search, which may also include the arrestees being required to manipulate their bodies. Id. at 14-15 (Alito, J., concurring). This case involves a possible strip search in a public street, far from the confines of a general population prison. Here, plaintiff does not challenge whether the drugs would have been discovered; instead, he argues that the officers should have performed the search on him at the police station or jail.

-11-

the less intrusive reach-in search. Thus, the Court denies defendants qualified immunity on plaintiff's claims relating to the strip/body cavity search.

**C.  Mo. Rev. Stat. § 544.193**

Defendants argue in their Reply papers that plaintiff cannot assert a <u>Monnell</u> claim for violating Mo. Rev. Stat. 544.193 because the City of Columbia is not a defendant to this lawsuit. Plaintiff has not asserted a <u>Monnell</u> claim, but was citing the statute to establish that plaintiff's right to be free from a public strip search was clearly established at the time this incident took place.

**D.  Defendant Houston**

Defendant Houston argues that he was a limited actor in removing the drugs from plaintiff and therefore he is entitled to qualified immunity. Plaintiff simply responds that if defendant's assertion is true, then plaintiff agrees that Officer Houston was a limited actor in regard to the strip/cavity search. However, it is unclear from the video which officer is Officer Houston and it is unclear what part, if any, he played in removing the drugs from plaintiff. And, after viewing the video, the Court is unable to determine at what point the drugs were removed from plaintiff's person. Therefore, the Court finds there is a genuine issue of fact as to whether Officer Houston was involved in capturing the drugs from plaintiff. Therefore, the Court denies Officer Houston qualified immunity.

**D.  Due Process Claim**

Lastly, defendants claim that plaintiff's due process violations of the Fifth and Fourteenth Amendments in Count III are barred by plaintiff's guilty plea. Defendants state that plaintiff's substantive due process claims are barred by <u>Vennes v. An Unknown No. of Unidentified Agents</u>, 26 F.3d 1448 (8th Cir. 1994). In <u>Vennes</u>, the Eighth Circuit faced, among other things, the issue of

whether a plaintiff – who had previously pled guilty and nolo contendere to money laundering, firearms, and drug offenses – could assert a substantive due process claim against unnamed FBI agents in a Bivens[5] action for allegedly engaging in outrageous conduct, namely, by issuing death threats to him and his family if he did not partake in criminal activity. Id. at 1451. Importantly, Vennes did not move to have his criminal indictment dismissed on grounds of entrapment and outrageous conduct and he subsequently "bargained away those defenses, [by] exchanging guilty and nolo contendere pleas for a relatively light sentence." Id. at 1451. In affirming the district court's decision to grant defendants' motion for summary judgment, the Eighth Circuit stated:

> [b]y pleading guilty, Vennes elected to forego the post-deprivation process best suited to determining whether the agents in fact violated his due process rights – the criminal trial. Any procedural due process claims are therefore barred. Although Vennes claims a substantive due process violation, we have held that, when procedural due process claims under § 1983 are barred by *Parratt*, claims based on the same actions but alleging denial of substantive due process should be barred as well. The same principle should apply in a *Bivens* action, the federal law analogous to § 1983.

Id. (internal quotations and citations omitted).

The Court does not find that defendants' application of Vennes to this case is sound. The Eighth Circuit in Vennes ruled that, when a procedural due process claim is predicated on the deprivation of rights sustained during a criminal investigation and subsequently results in the suspect being charged, any procedural claims would be barred. Id. at 1452 (citing Parratt v. Taylor, 451 U.S. 527 (1981). That is, if a plaintiff in a Section 1983 case is trying to establish a substantive due process claim predicated upon a deprivation of rights that occurred during a criminal investigation

---

[5] A Bivens action is titled after the Supreme Court case of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

-13-

but *did not result in his being charged*, the claims are not barred by Vennes. Id. Here, plaintiff is not claiming that the search invalidates his conviction, nor is he claiming a deprivation of a right sustained during a criminal investigation; rather, he asserts that his constitutional and civil rights were violated when he was subjected to a public strip and cavity search. This type of substantive due process claim is not barred by Vennes.[6]

Nonetheless, the Court finds that plaintiff has failed to assert a sufficient substantive due process claim. The Eighth Circuit in Vennes, referring to its earlier decision in Gunderson v. Schlueter, 904 F.2d 407 (8th Cir. 1999), found that a plaintiff may be able to assert a substantive due process claim, but only if the situation is one in which "the conduct of law enforcement agents is so outrageous that due process principles are violated." Vennes, 26 F.3d at 1451-52; see also Schmidt v. City of Bella Villa, 557 F.3d 564, 574 (8th Cir. 2009) (substantive due process claim under Fourteenth Amendment requires plaintiff to show the alleged "behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."). Plaintiff's Amended Complaint and summary judgment papers do not allege that defendants' actions were so outrageous that it "shocks [one's] conscience." Gunderson, 904 F.2d at 410 (citing Rochin v. California, 342 U.S. 165, 172 (1952). And as established in Gunderson, the bar for finding the level of "outrageousness needed to prove such a due process violation . . . is quite high."

In this case, plaintiff alleges that the officers' actions were intentional, but the facts here do

---

[6] The Court also rejects plaintiff's argument that Vennes has no application to the present case because Vennes was a Bivens action and this case is a Section 1983 case. A Bivens action is a federal claim analogous to a Section 1983 claim. Id.

not meet the level of conduct that is so outrageous that it shocks the conscience or offends this Court's notions of fairness. There is no act alleged that could be construed as "so egregious, [or] so outrageous, that it may fairly be said to shock the contemporary conscience." Schmidt, 557 F.3d at 574; Cf. Hawkins v. Holloway, 316 F.3d 777, 785 (8th Cir. 2003) (repeatedly and intentionally touching plaintiff's breasts); Rogers v. City of Little Rock, Ark., 152 F.3d 790 (8th Cir. 1998) (affirming verdict in favor of woman who was raped by police officer after he stopped her for traffic violation). Further, plaintiff has failed to point the Court toward any case law to support his contention that conduct similar to that which he has alleges violates due process. Therefore, the Court will grant defendants' motion for summary judgment on plaintiff's substantive due process claim in Count III.

## IV. Conclusion

Because genuine issues of fact remain regarding the scope of the intrusion and the manner in which the search was conducted, the Court is denying summary judgment to the defendants on plaintiff's strip/body cavity claims. The Court is granting summary judgment to defendants on all remaining claims.

Accordingly, it is hereby

ORDERED that defendants' Second Motion for Summary Judgment (Doc. #76) is granted in part and denied in part. It is further

ORDERED that because the undersigned no longer presides over trials, the Clerk of the Court shall reassign this case to another Division for all future proceedings.

-15-

    /s/ Scott O. Wright  
    SCOTT O. WRIGHT  
    Senior United States District Judge

DATED: <u>April 4, 2012</u>